Matter of Christensen-Mavrigiannakis v Nomura Sec. Intl., Inc. (2019 NY Slip Op 06836)





Matter of Christensen-Mavrigiannakis v Nomura Sec. Intl., Inc.


2019 NY Slip Op 06836


Decided on September 26, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: September 26, 2019

528134

[*1]In the Matter of the Claim of Deborah Christensen-Mavrigiannakis, Claimant,
v
Nomura Securities International, Inc., et al., Appellants. Workers' Compensation Board, Respondent.

Calendar Date: September 4, 2019

Before: Egan Jr., J.P., Clark, Devine, Aarons and Pritzker, JJ.


Morrison Mahoney LLP, New York City (David Allweiss of counsel), for appellants.
Letitia James, Attorney General, New York City (Marjorie S. Leff of counsel), for respondent.



Pritzker, J.
Appeals (1) from a decision of the Workers' Compensation Board, filed March 8, 2018, which ruled that the claim was properly amended to include an injury to claimant's left shoulder, and (2) from a decision of said Board, filed March 9, 2018, which further amended the claim to include claimant's bilateral carpal tunnel syndrome and right cubital tunnel syndrome as additional sites of injury and made awards after March 30, 2017 at the temporary total disability rate.
Claimant, an administrative assistant, was injured on March 29, 2016 when she fell on a slippery floor as she was leaving the cafeteria at work. When claimant fell, she twisted her body in such a manner that she injured her lower back and neck. Due to the injuries that she sustained, she filed a claim for workers' compensation benefits.
Shortly after the accident, claimant was treated by William Lackey, an orthopedic surgeon, who observed that she had cervical, thoracic and lumbar spine pain and exhibited radicular type symptoms of pain going to her lower and upper extremities. Upon further examination, he noted that claimant's symptoms were consistent with falling onto an outstretched arm and indicated that she also had additional symptoms involving her left shoulder that were consistent with the fall. Lackey ordered claimant to undergo diagnostic tests, including MRIs of her spine.
Following an October 2016 hearing, a Workers' Compensation Law Judge (hereinafter WCLJ) established the claim for injuries to claimant's neck and back, found prima facie medical evidence of an injury to her left shoulder and continued the case. At the request of the employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier), claimant submitted to an independent medical examination that was performed by Pierce Ferriter, an orthopedic surgeon. Based upon his examination of claimant and a review of her medical records, he opined that she suffered from cervical spine sprain/strain and lumber spine sprain/strain that was causally related to the accident, but indicated that the injury to her left shoulder was not causally related. Ferriter further indicated that claimant had reached maximum medical improvement with respect to her neck and back injuries and was able to return to work without restrictions.
In response, the carrier filed a request for further action seeking the suspension of continued payments, as well as documentation regarding claimant's return to work. Following a February 2017 hearing, the WCLJ directed depositions of Ferriter and Lackey on the issues of claimant's causally-related left shoulder injury and claimant's further causally-related disability. The WCLJ also found prima facie medical evidence of claimant's bilateral carpal tunnel syndrome and right cubital tunnel syndrome based on Lackey's January 2017 report.
During his deposition, Lackey testified that claimant sustained disc herniations in her cervical, thoracic and lumbar spine that were related to her work-related accident. He stated that her shoulder injury was not new, but was identified after he determined that it may have been falsely attributed to her cervical injury. According to him, this injury was consistent with the reflexive response of reaching out one's hand to break a fall, as claimant had done. Based on the MRI results, he diagnosed claimant with a bicep anchor attachment injury, which he stated was due to the trauma that she had sustained when she fell. Lackey also diagnosed claimant with bilateral carpal tunnel syndrome and right cubital tunnel syndrome, which he stated were also causally related to her fall. He acknowledged that he did not treat her for these conditions until many months after the accident. However, he maintained that they were caused by trauma and not by overactivity, as claimant did not have these conditions prior to the accident and did not return to work as an administrative assistant thereafter. Lastly, Lackey opined that, due to claimant's limitations in sitting, standing, pushing, pulling, carrying and lifting, combined with her shoulder restrictions and loss of fine motor skills, she was totally disabled.
In contrast, Ferriter testified during his deposition that claimant suffered from cervical spine sprain/strain and lumbar spine sprain/strain as a result of the accident. He stated that she had some limitations due to her left shoulder injury, but did not believe that they were causally related to the accident, as they did not arise until many months later. He acknowledged that a shoulder injury could be caused by extending one's arm to break a fall and that it was possible that claimant injured her shoulder in this manner. He further stated that claimant had reached maximum medical improvement and was fully capable of returning to work. Although Ferriter provided a report after he conducted an independent medical examination of claimant indicating that her bilateral carpal tunnel syndrome and right cubital tunnel syndrome were not causally related to the accident, he did not testify with regard to these conditions at the deposition.
In July 2017, the WCLJ issued a decision amending the claim to include claimant's left shoulder as an additional injury site based upon Lackey's testimony. As for the degree of claimant's disability, the WCLJ rejected Lackey's testimony that claimant was totally disabled and concluded that claimant had a mild disability, discontinuing awards after March 30, 2017. In addition, the WCLJ continued the case for further testimony on the issue of claimant's causally-related bilateral carpal tunnel syndrome and right cubital tunnel syndrome. However, insofar as the WCLJ amended the claim to include claimant's left shoulder injury, the carrier sought review of this decision by the Workers' Compensation Board. The Board issued a decision upholding the WCLJ's amendment of the claim.
Further depositions of Lackey and Ferriter were subsequently conducted in accordance with the WCLJ's directive. During his deposition, Lackey adhered to his opinion that claimant's bilateral carpal tunnel syndrome and right cubital tunnel syndrome were causally related to claimant's accident based upon his longstanding treatment of claimant since April 2016. Likewise, during his deposition, Ferriter adhered to his opinion that there was no causal relationship between these conditions and claimant's accident, given the delay in reporting them and that they were typically the result of occupational repetitive-type activities.
The WCLJ credited Ferriter's testimony over Lackey's and issued a December 2017 decision denying the claims for bilateral carpel tunnel syndrome and right cubital tunnel syndrome as additional injury sites. In addition, the WCLJ noted that the Board had in the interim issued a proposed decision, to which the carrier objected, ignoring the WCLJ's July 2017 decision, which had found that claimant had a mild disability and discontinued awards after March 30, 2017. Accordingly, the WCLJ again directed that no awards were to be made after March 30, 2017.
Claimant sought Board review of the WCLJ's December 2017 decision. Contrary to the WCLJ's finding, the Board concluded that the medical evidence established the existence of a causal relationship between claimant's bilateral carpal tunnel syndrome and cubital tunnel syndrome and her work-related accident. Therefore, the Board amended the claim to include these additional sites of injury. The Board further found that there was medical evidence that claimant was totally disabled as of March 30, 2017 and thereafter and, consequently, it issued awards from March 30, 2017 to December 8, 2017 at the temporary total disability rate of $844.29 per week. The carrier appeals from both Board decisions.
Initially, the carrier argues that the Board erroneously amended the claim to include claimant's left shoulder injury upon finding that such injury was causally related to her work-related accident. Preliminarily, we note that "'[t]he Board is empowered to determine the factual issue of whether a causal relationship exists based upon the record, and its determination will not be disturbed when supported by substantial evidence'" (Matter of Schmerler v Longwood Sch. Dist., 163 AD3d 1373, 1374 [2018], lv denied 32 NY3d 910 [2018], quoting Matter of Park v Corizon Health Inc., 158 AD3d 970, 971 [2018], lv denied 31 NY3d 909 [2018]; see Matter of Bufearon v City of Rochester Bur. of Empl. Relations, 167 AD3d 1391, 1392 [2018]). In addition, "[a]s the party seeking benefits, claimant bears the burden of establishing, by competent medical evidence, a causal connection or relationship between [her] employment and the claimed disability" (Matter of Buffearon v City of Rochester Bureau of Employee Relations, 167 AD3d at 1392; see Matter of Park v Corizon Health Inc., 158 AD3d at 971). Furthermore, "[w]here conflicting medical opinions are presented on the issue of causality, the Board is vested with the authority to resolve the conflicts and deference is accorded to its credibility determinations" (Matter of Turner v New York City Dept. of Juvenile Justice, 159 AD3d 1236, 1237 [2018]; see Matter of Schmerler v Longwood Sch. Dist., 163 AD3d at 1374).
Here, Lackey and Ferriter gave conflicting medical opinions as to whether claimant's left shoulder injury was causally related to the accident. Lackey opined that it was causally related based on the manner in which claimant fell and the fact that the bicep anchor attachment injury of the type that she sustained is produced by trauma. Although it took him 2½ months to diagnose this injury, he attributed the delay to the fact that it had been erroneously thought to be associated with claimant's cervical injury. Ferriter, on the other hand, opined that there was no causal relationship based solely on the fact that claimant did not complain of problems with her shoulder until months after the accident. Given that there was a more compelling clinical basis for Lackey's opinion, we defer to the Board's decision to credit his opinion over Ferriter's and find that substantial evidence supports the Board's decision amending the claim to include claimant's left shoulder injury (see Matter of Molette v New York City Tr. Auth., 166 AD3d 1278, 1278-1279 [2018]; Matter of Kemraj v Garelick Farms, 164 AD3d 1504, 1505 [2018]).
The carrier further contends that the Board erred in reversing the WCLJ's decision disallowing amendment of the claim to include claimant's bilateral carpal tunnel syndrome and right cubital tunnel syndrome as additional sites of injury upon its finding that these injuries were also causally related to her work-related accident. Once again, Lackey and Ferriter gave conflicting medical opinions on this issue. Lackey opined that these conditions, which were not diagnosed until almost a year after the accident, were causally related. He based his opinion on the fact that claimant did not have these conditions prior to the accident and that she was no longer engaged in repetitive type activities associated with her duties as an adminstrative assistant after the accident.[FN1] Thus, he concluded that these conditions were caused by the trauma of claimant's fall. In summary, he stated that "[claimant's] symptoms and complaints were chronologically consistent with an onset of symptoms after the time of fall which is a causally related accident correlating to the work-related accident."
In contrast, Ferriter opined that claimant's bilateral carpal tunnel syndrome and right cubital tunnel syndrome were not causally related. He noted that his physical examination of claimant did not reveal any signs of these conditions and that the diagnostic tests that were performed disclosed only very mild findings. He further stated that these conditions were almost always associated with some type of repetitive movement, often in an occupational setting. In view of this, and based on claimant's failure to report these conditions at the time of her fall, Ferriter concluded that there was no causal relationship.
Significantly, "[w]here medical proof is relied upon to demonstrate the existence of a causal relationship, it must signify a probability of the underlying cause that is supported by a rational basis" (Matter of Park v Corizon Health Inc., 158 AD3d at 971 [internal quotation marks and citations omitted]; see Matter of Van Patten v Quandt's Wholesale Distribs., 198 AD2d 539, 540 [1993]). Here, Lackey's opinion, relied upon the Board, is not supported by a rational basis. Indeed, his testimony is conclusory and he did not rely upon any medical expertise in formulating his opinion. Rather, he simply concluded that because claimant did not suffer from these conditions before the accident and was not engaged in repetitive activities afterwards, her conditions must have been caused by the fall. Notably, his conclusion is somewhat contradictory, as the fact that claimant was no longer engaged in repetitive activities after the accident would seem to make her less likely to develop bilateral carpal tunnel syndrome and right cubital tunnel syndrome. On the other hand, Ferriter provided a rational opinion as to the absence of a causal relationship supported by his physical examination of claimant, claimant's nearly one-year delay in reporting these conditions and the manner in which these conditions most often manifest. In view of the foregoing, given that the Board based its decision on medical evidence that was not rational, we find that substantial evidence does not support its decision amending the claim to include claimant's bilateral carpal tunnel syndrome and right cubital tunnel syndrome as additional sites of injury (see Matter of Pinkhasov v Auto One Ins., 140 AD3d 1487, 1489 [2016]; Matter of Hartigan v Albany County Sheriff's Dept., 140 AD3d 1258, 1260 [2016]).
Lastly, the carrier asserts that the Board had no authority to find that claimant was totally disabled and to make awards at the temporary total disability rate, because no appeal was taken from the WCLJ's July 2017 decision finding that claimant was mildly disabled and discontinuing awards after March 30, 2017. We disagree. "The Board is granted 'broad jurisdiction [that] includes the power, on its own motion or on application, to modify or rescind a [WCLJ's] decision . . . and . . . its continuing jurisdiction embraces the power of modification or change with respect to former findings, awards, decisions or orders relating thereto, as in its opinion may be just'" (Matter of Fleurissaint v Lenox Hill Hosp., 147 AD3d 1189, 1190 [2017], quoting Matter of Ronda v Edenwald Contr., 216 AD2d 741, 741 [1995]; see Workers' Compensation Law § 123). Here, the Board, acting sua sponte, found that claimant was totally disabled and issued awards at the temporary total disability rate based thereupon. Lackey's testimony concerning claimant's many physical limitations and her total disability provides substantial evidence supporting the Board's findings. Therefore, we find no reason to disturb these awards that were made by the Board.
Egan Jr., J.P., Clark, Devine and Aarons, JJ., concur.
ORDERED that the decision filed March 8, 2018 is affirmed, without costs.
ORDERED that the decision filed March 9, 2018 is modified, without costs, by reversing so much thereof as amended the claim to include claimant's bilateral carpal tunnel syndrome and right cubital tunnel syndrome as additional sites of injuries, and as so modified, affirmed.



Footnotes

Footnote 1: Lackey further described double crush syndrome, which occurs when a nerve is compressed at two different locations — such as at the neck and hand — and explained that it produces symptoms of peripheral neuropathy that were also consistent with claimant's fall. He did not, however, explain how this impacted claimant's carpal tunnel syndrome or cubital tunnel syndrome.